UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

ALSTOM CHILE S.A., et al.,

        Plaintiffs,

  -v-                                                         No. 13 Civ. 2416 (LTS)(DCF)

MAPFRE COMPANIA DE SEGUROS
GENERALES CHILE S.A.,

        Defendant.

----------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Alstom Chile S.A. and Alstom Power Systems S.A. ("Plaintiffs") filed a Complaint and Petition on April 11, 2013, seeking to compel Mapfre Compania De Seguros Generales Chile S.A. ("Defendant") to arbitrate certain claims arising under and relating to the performance of a contract (the "Agreement") for the engineering, procurement, and construction of a power generation facility in Mejillones, Chile (the "Facility"). Plaintiffs also seek an injunction barring the further prosecution in Chile of litigation regarding these matters. The Court has jurisdiction of this action pursuant to 9 U.S.C. § 301.

For the following reasons, the Court orders Defendant to arbitrate its claims relating to the Agreement and the Facility against Plaintiffs and permanently enjoins Defendant from prosecuting the related proceedings in Chile.

### BACKGROUND

Plaintiffs entered into the Agreement with Gas Atecama Generacion S.A. ("Gas

Atecama") on or about August 6, 1997.[1]  Defendant provided all risk insurance to Gas Atecama for the Facility under a certain Fire and Accessories Policy.  The Facility was completed in December 1999, and subsequently Gas Atecama filed a claim against Defendant alleging material damages and loss of benefits arising from events at the Facility in 2007 and 2008.  Defendant allegedly paid Gas Atacama $33,002,051 for the loss.  Defendant thereafter filed a suit against Plaintiffs in civil court in Santiago, Chile, in January 2012 (the "Chilean Action"), seeking to recover the monies it had paid to Gas Atecama.  Defendant, as Gas Atecama's subrogee, asserts two causes of action against Plaintiffs: 1) for breach of the Agreement and 2) for indemnification based on tort liability.  On July 5, 2013, the Chilean court ordered that Defendant's contract breach claim be arbitrated and that the tort-based indemnification claim be suspended pending resolution of the arbitration.

The Agreement requires a 60-day period of good faith discussions (the "60-day Negotiation") among senior officers of the parties prior to a demand for arbitration.  Specifically, section 14.1 of the Agreement provides that:

> Owner and Contractor desire that this Agreement operate between them fairly and reasonably. If, during the term of this Agreement, a dispute arises between Owner and Contractor which is not resolved by good faith discussions between the parties, then the matter shall be referred to senior officers of the respective parties, who shall endeavor in good faith to resolve such disputed issues expeditiously. Neither party shall seek arbitration of any dispute arising in connection with this Agreement until a period of at least sixty (60) Days has elapsed since the dispute was referred to such senior officers, without a resolution.

Section 14.2.1 provides that, following the 60-day Negotiation:

> [a]ny further controversy, dispute, or claim between Contractor and Owner arising out of or relating to this Agreement, or the breach thereof, if not settled by

---

[1]  The relevant portion of the Agreement is attached to the Complaint and Petition as Exhibit A.  (Docket entry no. 1.)

>the parties by agreement subject to Section 14.1, shall be settled finally and conclusively by arbitration, in English, in accordance with the Rules of Arbitration of the International Chamber of Commerce (and with the procedural law of the State of New York, United States of America, in matters as to which such Rules of Arbitration are silent) by arbitrators appointed in accordance with Section 14.2.3. This Agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.

The Agreement additionally provides that it is to "to be governed by the law of the State of New York, United States of America, excluding the laws of such State pertaining to conflict of laws." (Agreement at section 15.13.)  Any arbitration under the Agreement must be held in New York, New York, "unless the parties mutually agree otherwise."  (Agreement at section 12.2.5.) Plaintiffs argue that this arbitration provision of the Agreement requires Defendant to resolve the disputes underlying the subrogation litigation through an arbitration and pursuant to the laws of New York.  Defendant argues that Plaintiffs breached the Agreement because they did not comply with the 60-day Negotiation requirement of section 14.1, and that the arbitration provision is thus unenforceable.  Secondarily, Defendant argues that considerations of international comity and judicial efficiency counsel the Court to stay this proceeding pending the outcome of the Chilean Action.

## DISCUSSION

Whether a suit is subject to compulsory arbitration is a matter of state contract law. <u>Bell v. Cendant Corp.</u>, 293 F.3d 563, 566 (2d Cir. 2002).  Therefore, "[a] party cannot be required to submit to arbitration for any dispute which it has not agreed so to submit." <u>Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.</u>, 252 F.3d 218, 224 (2d Cir. 2001).

Petition to Compel Arbitration

   Plaintiffs seek to compel Defendant to arbitrate the disputes underlying the Chilean Action.  The Court concludes that these claims must be arbitrated pursuant to the Agreement.  "The determination of whether a dispute is arbitrable under the FAA comprises two questions: (1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."  <u>Hartford Acc. & Indem. Co. v. Swiss Reinsurance Amer. Corp.</u>, 246 F.3d 219, 226 (2d Cir. 2001) (quotation marks omitted).  It is well established that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit."  <u>AT & T Tech., Inc. v. Communications Workers of Am.</u>, 475 U.S. 643, 648 (1986).  To determine whether there is a valid agreement to arbitrate, a court must apply the "generally accepted principles of contract law."  <u>Genesco, Inc. v. T. Kakiuchi & Co.</u>, 815 F.2d 840, 845 (2d Cir. 1987).  "[A] party is bound by the provisions of a contract that [it] signs, unless [it] can show special circumstances that would relieve [it] of such obligation."  <u>Id.</u>  A court should consider only "whether there was an objective agreement with respect to the entire contract."  <u>AT & T Tech.</u>, 475 U.S. at 648.

   Here, the parties do not dispute that the Agreement contains a valid arbitration clause that requires the arbitration of all disputes "arising out of or relating to" the Agreement.  Where an arbitration clause is broad in scope, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it."  <u>ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.</u>, 307 F.3d 24, 34 (2d Cir. 2002).  "Absent an express provision excluding a particular grievance from arbitration, only the most forceful evidence of a purpose to

exclude the claim from arbitration will satisfy a party's substantial hurdle to rebut this presumption of arbitrability."  Vera v. Saks & Co., 335 F.3d 109, 117 (2d Cir. 2003).

The obvious breadth of the contractual provision at issue requires this Court to presume that any claim arising from or relating to the relationship between Plaintiffs and Gas Atecama, as Defendant's subrogor, is subject to arbitration.  See Ace Capital, 307 F.3d at 34.  Defendant has offered no evidence of any contrary intent to rebut this presumption.  Because both of Defendant's claims against Plaintiffs are based on conduct pursuant to or relating to the Agreement, both are plainly arbitrable.

Defendant argues that Plaintiffs' petition should be denied because Plaintiffs failed to comply with the 60-day Negotiation provision prior to filing the instant petition to compel arbitration.  However, it was Defendant that filed the Chilean Action, apparently without prior negotiation.  Defendant, having eschewed the 60-day Negotiation process, cannot now invoke it as a barrier to enforcement of the Agreement's arbitration provision.  Defendant's interpretation of the negotiation provision is absurd, because it would nullify the purpose of the arbitration clause, that is, to require an aggrieved party to the Agreement to seek redress pursuant to arbitration rather than suit.  See, e.g., RJE Corp. v. Northville Indus. Corp., 329 F.3d 310, 314 (2d Cir. 2003) (holding that courts must consider the entire contract to "safeguard against adopting an interpretation that would render any individual provision superfluous") (quotation marks omitted).

Furthermore, to the extent there is any genuine dispute as to interpretation of the Agreement, the plain language of the arbitration clause itself requires the parties to submit the controversy to arbitration.  Plaintiffs' petition to compel arbitration will, accordingly, be granted.

Anti-Suit Injunction

Where a party seeks to enjoin a parallel litigation in a foreign forum, it must demonstrate satisfaction of two threshold factors, showing that: 1) "the parties are the same in both matters," and 2) "resolution of the case before the enjoining court is dispositive of the action to be enjoined." Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Tech., Inc., 369 F.3d 645, 652 (2d Cir. 2004).  In this case there is no dispute that the parties to the arbitration will be identical to those in the Chilean Action.  As to the second threshold factor, "although this Court will not determine the outcome of the underlying dispute, an order by this Court compelling arbitration will result in a determination of the dispute in the arbitration."  See Stolt Tankers BV v. Allianz Seguros, S.A., No. 11 Civ. 2331, 2011 U.S. Dist. LEXIS 67755, at *17 (S.D.N.Y. June 16, 2011).  Defendant argues that, because the indemnification claim based on tort damages is not a contract claim, and New York law does not provide for such a cause of action, arbitration in New York cannot be dispositive of the issues raised in the Chilean Action. This argument, however, is unavailing.  The parties agreed to arbitrate "[a]ny further controversy, dispute, or claim between Contractor and Owner arising out of or relating to this Agreement" pursuant to the law of the State of New York.  The entire controversy must be submitted to arbitration, regardless of whether the contractual choice of law clause might foreclose an otherwise viable cause of action under the law of another jurisdiction.  The second threshold factor is met.

Once the threshold criteria are met, courts must weigh five additional factors in determining if the injunction is appropriate.  See China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 35 (2d Cir. 1987).  The Court must consider whether:

> (1) [denial of an injunction would lead to] frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) [prosecution of the other

>litigation would pose] a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, or a race to judgment.

Stolt Tankers, 2011 U.S. Dist. LEXIS 67755, at *10.  Furthermore, where a party initiates a foreign suit in "an attempt to sidestep arbitration," an anti-suit injunction may be particularly appropriate "given the federal policy favoring liberal enforcement of arbitration clauses."  See LAIF X SPRL v. Axtel, S.A. de C.V., 390 F.3d 194, 199 (2d Cir. 2004) (quoting Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Technologies, Inc., 369 F.3d 645, 652 (2d Cir. 2004)) (quotation marks omitted).

      The China Trade factors warrant the granting of an injunction prohibiting prosecution of the Chilean Action pending arbitration in New York.  First, permitting Defendant to continue to pursue the Chilean Action would impede the important federal policy preference for the enforcement of arbitration agreements.  See Ibeto Petrochemical Indus., Ltd. v. M/T "Beffen", 412 F. Supp. 2d 285, 289 (S.D.N.Y. 2005).  Second, requiring Plaintiffs to litigate the same issues simultaneously on two continents would, in light of the mandatory arbitration provision, be vexatious to Plaintiffs.  Third, equitable considerations favor enjoining Defendant from pursuing the Chilean Action, as the Court must deter forum shopping and it appears here that Defendant sought an alternative forum to avoid the application of New York law.  Finally, the litigation of two suits would, at minimum, be inconvenient for the Plaintiffs, would increase litigation costs, and could result in inconsistent judgments.

CONCLUSION

For the foregoing reasons, Plaintiffs' petition to compel arbitration is granted. The parties are directed to proceed promptly to arbitration in accordance with section 14.2.1 of the Agreement.

Plaintiffs' request for injunctive relief is also granted.  Defendant, its officers, agents, servants, employees, attorneys, and any other person in active concert or participation with any of them are hereby permanently enjoined from prosecuting the Chilean Action. Defendant is further directed to seek dismissal of any pending appeal and of the underlying Chilean Action, if the case is still pending.

The Clerk of the Court is requested to enter judgment and close this case.

Dated: New York, New York
         October 31, 2013

                                          /S
                                       LAURA TAYLOR SWAIN
                                       United States District Judge